# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ROSALINN M. GIANG, | ) |
| Plaintiff, | ) |
| v. | ) Case No. CIV-22-112-D |
| DAVID STEINER[1], Postmaster General, | ) |
| Defendant. | ) |

## ORDER

Before the Court is Defendant's Motion for Sanctions with Brief in Support [Doc. No. 86]. Plaintiff filed a response [Doc. No. 89][2], and Defendant replied [Doc. No. 92]. The matter is fully briefed and at issue.

## FACTUAL BACKGROUND

This action stems from Plaintiff's former employment with the United States Postal Service (USPS). Plaintiff filed suit against the Postmaster General, alleging that during her employment as a mail processing clerk, she was discriminated against because of her race, gender, national origin, age, and disability. Plaintiff further alleged that she was subjected to a hostile work environment, retaliated against for engaging in EEO activities, and constructively discharged.

---

[1] Pursuant to FED. R. CIV. P. 25(d), Mr. Steiner is automatically substituted as the proper party defendant.

[2] Plaintiff appeared *pro se* in this action until February 26, 2025, at which time counsel entered an appearance on behalf of Plaintiff. [Doc. No. 81]. Plaintiff's response to Defendant's motion for sanctions was filed by Plaintiff's counsel.

1

Defendant filed a Motion to Dismiss [Doc. No. 29], which the Court granted in part and denied in part [Doc. No. 48]. Only Plaintiff's claims for Title VII retaliation, retaliatory hostile work environment, and constructive discharge survived dismissal. In support of her claims, Plaintiff had supplied the Court with various signed witness statements concerning her allegations.

On November 26, 2024, Defendant filed a Notice of Suspected Fraud Committed Upon the Court and Motion for a Stay of Proceedings [Doc. No. 72]. In it, Defendant alleged that Plaintiff had submitted false and fraudulent statements to the Court in support of her claims. Defendant stated that, for several of Plaintiff's witness statements, "the substantive content of the statements ha[d] often proven to be untrue or unknowable by the named witness" and "the named witnesses neither signed nor ratified the statements." *Id.* at 1. In her Response [Doc. No. 75], Plaintiff seemed to argue there was no harm "because the Plaintiff's documents, exhibits previously filed in this action have been all stricken and were not considered by the Court." [Doc. No. 75, at 1-2].

Given the seriousness of Defendant's allegations, the Court stayed the action for ninety days, subject only to Defendant seeking limited discovery into fabricated and/or wrongfully obtained evidence in this case. In that Order [Doc. No. 80], the Court noted that Plaintiff seemed to lack an appreciation for the seriousness of Defendant's allegations, and the Court further notified Plaintiff that courts have "issued the harsh sanction of dismissal for far less serious offenses." *Id.* at 2. The Court also ordered Plaintiff to comply with discovery into the limited issue of fraudulent or fabricated statements. *Id.* at 3.

Following the limited discovery period and expiration of the stay, Defendant filed the present Motion for Sanctions [Doc. No. 86], seeking dismissal of Plaintiff's action, pursuant to the Court's inherent authority and Federal Rules of Civil Procedure 11, 37, and 41.

## I.   Forged or Falsified Witness Statements

Defendant has provided evidence that Plaintiff has filed with the Court numerous fabricated and/or forged statements during this litigation.

### a.   Witness Daniel Riemann

Plaintiff has filed two statements [Doc. No. 42-31, at 12-13], which were purportedly made and signed by Daniel Riemann. The first statement reflects that Mr. Riemann "witness[ed] that Quang Nguyen and Rosalinn Giang are treated differently than other injury on duty employees," adding that "Quang Nguyen and Rosalinn Giang (husband and wife) are the only two injury employees in our unit who are constantly sent home." *Id.* at 12. The second statement relates to how much work was available in Plaintiff's unit during the time when Plaintiff and her husband were allegedly sent home each day. *Id.* at 13. Both statements purportedly reflect Mr. Riemann's name and signature. *Id.* at 12-13.

Suspecting that Plaintiff forged these statements, Defendant contacted Mr. Riemann, who provided a signed Declaration [Doc. No. 86-5] related to the two documents bearing his signature. In it, Mr. Riemann states: "I did not draft either of these documents. Although my signature appears on them, I did not sign them, and I do not know how my signature ended up on them." *Id.* at ¶ 2. Mr. Riemann adds that he "would not have signed [his] name

3

to something with grammatical errors or without appropriate punctuation." *Id.* at ¶ 3. Further, Mr. Riemann provides:

> With respect to the typewritten statement, I am not aware of the facts stated in the 'Witness Statement,' and would not have signed my name to it. This is especially true given the grammatical errors. In fact, **I was not even aware of the names Quang Nguyen and Rosalinn Giang before seeing this statement**. Although it states, 'I am a co-worker of Quang Nguyen and Rosalinn Giang as a Mail Processing Clerk,' this is not true. I was a Mailhandler, which is a different position with different responsibilities. Similarly, although it references 'our unit,' **I did not work in the same unit as the Plaintiff** in this case….

*Id.* at ¶ 4 (emphasis added). Upon review of Mr. Riemann's signed Declaration [Doc. No. 86-5], the Court finds that the two statements that Plaintiff submitted and attributed to Mr. Riemann [Doc. No. 42-31, at 12-13] were not drafted or signed by Mr. Riemann.

In response to Mr. Riemann's Declaration, Plaintiff appears to double down, claiming that Plaintiff obtained the two signed statements from her husband, Quang Nguyen, and that they both reflect Mr. Riemann's signature. [Doc. No. 89, at 7]. However, given Mr. Riemann's signed Declaration stating that he did not sign the statements and was "not even aware of the names Quang Nguyen and Rosalinn Giang before seeing this statement," the Court finds that Plaintiff's explanation lacks credibility.

      **b.**    **Witness Sheila K. Todd (now Sheila House)**

Plaintiff also submitted to the Court a signed "Witness Statement" by Sheila K. Todd (now Sheila House) [Doc. No. 42-31, at 8], in which Ms. House purportedly stated that she "witnessed Quang Nguyen and [Plaintiff] [be] treated differently than other injury on duty employees," and that Plaintiff and her husband were the "only two injury employees in our

4

unit who are constantly sent home for more than 10 months." *Id.* Plaintiff also submitted a statement allegedly signed by Ms. House related to how much mail was available in the unit [Doc. No. 32-56, at 2], which appears to be in the same handwriting as Mr. Riemann's alleged statement [Doc. No. 42-31, at 13].

Again, Defendant contacted Ms. House, who denies drafting or signing either of these statements attributed to her. *See* House Declaration, Doc. No. 86-6. Ms. House stated that she did not know how her signature ended up on either document, that she would not have signed the first statement "because [she has] no personal knowledge as to the facts contained in it," and that the handwritten statement purportedly bearing her signature is inconsistent with her practice in drafting statements in support of employees. *Id.* at ¶¶ 2, 4 ("I would have required more documentation and/or explanation in this handwritten document before I would have signed it, and I would have made my own statement … and attached it to the bottom of her full statement, below the mail counts at the bottom of the page."). Ms. House's Declaration also confirms that she did not draft either document, and that the handwriting in the second statement is not her own. *Id.* at ¶¶ 2, 4.

Again, Plaintiff does not respond to Ms. House's Declaration stating that she did not draft or sign either of these statements that Plaintiff submitted as signed by Ms. House, and Plaintiff continues to maintain that the witness statements are valid. [Doc. No. 89, at 7].

    **c.**    **Witness Janice Pickup**

Plaintiff also filed with the Court several statements purportedly made and signed by Janice Pickup [Doc. No. 32-22, at 2-3; Doc. No. 32-2, at 5; Doc. No. 42-31, at 4]. Defendant has since received a signed Declaration from Janice Pickup [Doc. No. 86-7], in

5

which she states that she "did not draft these documents," "did not sign these documents and do not know how [her] signature ended up on them," and that she "believe[s] [her] signature was forged." *Id.* at ¶ 2. Ms. Pickup further states that she "would not have signed [her] name to these statements because [she has] no personal knowledge as to many of the facts contained within them, [she] disagree[s] with statements made in them, and [she] would not have signed documents with [her] name misspelled on them." *Id.* In each of the three statements attributed to Ms. Pickup, her name is reflected as "Janice Pickup**s**." [Doc. No. 32-22, at 3; Doc. No. 32-2, at 5; Doc. No. 42-31, at 4]. In response, Plaintiff merely suggests that Ms. Pickup has motive to change her story because she is still employed with, and has since been promoted within, USPS. [Doc. No. 89, at 7].

        d.    **Witness Niocha Hishaw**

Plaintiff also submitted a statement purportedly signed by Niocha Hishaw [Doc. No. 32-59, at 2]. Ms. Hishaw has since signed a Declaration [Doc. No. 86-8], stating that she had never seen the statement, nor had she drafted or signed it. *Id.* at ¶ 2. She further stated that she "ha[d] no personal knowledge as to the facts contained in [the statement] and did not know that the December 11, 2016, incident had happened." *Id.* As with Ms. Pickup, Plaintiff doubles down on her use of Ms. Hishaw's statements and implies that Ms. Hishaw has since changed her story because she has since been promoted within USPS. [Doc. No. 89, at 8].

        e.    **Witness Veronique Trezvant**

Plaintiff also filed a statement purportedly signed by Veronique Trezvant [Doc. No 32-49, at 2]. In a signed Declaration [Doc. No. 86-9], Ms. Trezvant opines that "[her]

6

signature looks … to have been copied and pasted from another document and onto [this] document[]." *Id.* at ¶ 2. In Plaintiff's Response [Doc. No. 89], she argues that Ms. Trezvant's declaration does not show fraud or falsification by Plaintiff because another witness, Koquise Edwards, signed a declaration stating that "[she] witnessed … Veronique [Trezvant] talking to Rosalinn Giang about the incident" described in Ms. Trezvant's alleged statement. *Id.* at 8. However, the Court finds that Plaintiff's response does little to counter Ms. Trezvant's signed Declaration stating that she did not sign the statement submitted by Plaintiff or Ms. Trezvant's theory that her signature was likely lifted from another document.

## II.   Plaintiff's Participation in Discovery

In a prior Order [Doc. No. 80], the Court noted that Plaintiff had not denied the forgery allegations outright, but rather indicated that she caused no harm "because the Plaintiff's documents, exhibits previously filed in this action have been all stricken and were not considered by the Court." *Id.* at 1 (citing Doc. No. 75, at 1-2). Thus, Plaintiff averred that "there is no suspected fraud committed upon the Court" because Plaintiff's filings had been stricken for various reasons. [Doc. No. 75, at 2]. In staying the action subject only to discovery into Plaintiff's suspected fraud on the Court, the Court described Plaintiff's response as troubling, noted that Plaintiff did not appear to appreciate the seriousness of Defendant's allegations related to several of Plaintiff's witness statements, and warned that courts have issued the harsh sanction of dismissal for far less serious offenses [Doc. No. 80, at 2-3]. The Court further directed Plaintiff to "comply with discovery into this limited issue." *Id.* at 3.

During the stay, Defendant issued a third set of discovery requests, which included a request to inspect the original copies of all signed witness statements previously filed in this case. [Doc. No. 86-11]. The interrogatories and requests for production asked for an explanation as to how Plaintiff obtained signatures for specific individuals' witness statements and requested call logs and communications between Plaintiff and those individuals. *Id.* at 2-3, 6-7. The inspection of the witness statements was to occur on January 10, 2025, at 10:00 a.m. *Id.* at 9-10.

Plaintiff's deposition was noticed for February 12, 2025 [Doc. No. 86, at 16]. On December 30, 2024, Plaintiff requested a one-month extension to respond to the third set of discovery requests. *Id.* Given the timing of Plaintiff's deposition, defense counsel agreed to a two-week extension, making Plaintiff's deadline to respond January 20, 2025. *Id.* Defense counsel also agreed to delay the inspection of witness statements from January 10, 2025, to February 4, 2025, to accommodate Plaintiff's travel schedule. *Id.*

Plaintiff failed to respond to Defendant's third set of discovery requests. Plaintiff also failed to appear on February 4, 2025, for the inspection of original signed witness statements.

Within two days of Plaintiff's deposition date, Plaintiff contacted defense counsel stating, for the first time, Plaintiff's need to postpone the deposition because she was in the process of hiring an attorney. *Id.* at 17. Plaintiff's deposition was rescheduled for February 28, 2025. *Id.*

At her deposition, when asked why she failed to appear on February 4, 2025, Plaintiff indicated that she was afraid that the original documents would be taken at the

8

inspection, but she also stated that she "was sick" on February 3rd and "forgot," and that her husband was also sick. [Doc. No. 86-2, at 7-8, 12]. When Plaintiff explained why she did not have an original of one of the witness statements, Plaintiff stated:

> When this disappeared, that means, you know, maybe misplaced at some places or send it to the EEOC. You know, we moved in the past couple years. So, it just disappeared.

*Id.* at 14.

To date, Plaintiff has not provided responses to Defendant's third set of discovery requests. One week after Defendant filed the present Motion for Sanctions [Doc. No. 86], Plaintiff's counsel asked whether counsel for Defendant would like to review the multiple original documents of certain post office employees. Defense counsel suggests that Plaintiff's failure to respond in writing to the third set of discovery requests reflects Plaintiff's counsel's hesitation to provide her signature as to the authenticity of the "original" witness statements that are allegedly in Plaintiff's possession [Doc. No. 92, at 10].

In Plaintiff's Response [Doc. No. 89], Plaintiff's counsel states that Plaintiff has difficulty with the English language and that Plaintiff had proceeded *pro se* prior to retaining counsel. Throughout these proceedings, the Court has been sensitive to both circumstances. Notably missing from Plaintiff's response, however, is any compelling explanation as to why five separate witnesses claim that they had not drafted, seen, or signed the witness statements that Plaintiff filed in this action to support her case.

Plaintiff's counsel also implies that perhaps Plaintiff inadvertently overlooked the third set of discovery requests because "the parties were then focused on the discovery

relating to Defendant's allegations of fraudulent documents, which apparently took precedence over discovery on the merits of the case." [Doc. No. 89, at 9]. But Defendant's third set of discovery requests is clearly limited in scope to the allegations of fraud on the Court, and the Court had explicitly warned Plaintiff in its prior Order [Doc. No. 80] that Plaintiff needed to "comply with discovery into this limited issue." *Id.* at 3.

## STANDARD OF DECISION

FED. R. CIV. P. 37 provides that if a party "fails to obey an order to provide or permit discovery," the Court may invoke sanctions, to include "dismissing the action or proceeding in whole or in part." FED. R. CIV. P. 37(b)(2)(A)(v). Further, pursuant to the Court's inherent authority, "a court may impose appropriate sanctions to discourage misconduct and protect the integrity of judicial proceedings." *United States v. Rapower-3, LLC*, 470 F. Supp. 3d 1232, 1249 (D. Utah July 6, 2020). "Many courts have found the fabrication of evidence to be an abusive litigation practice, or even a type of fraud on the court." *Gilmer v. Colo. Inst. of Art*, 12 F. App'x 892, 894 (10th Cir. 2001) (unpublished) (collecting cases).[3]

Dismissal is "an extreme sanction appropriate only in cases of willful misconduct," should be used only when a lesser sanction would be ineffective, and requires a consideration of appropriate factors. *See Ehrenhaus v. Reynolds*, 965 F.2d 916, 920-21 (10th Cir. 1992); *see also LaFleur v. Teen Help*, 342 F.3d 1145, 1152 (10th Cir. 2003). Suggested factors include: "(1) the degree of actual prejudice to the defendant; (2) the

---

[3] Unpublished opinions are cited pursuant to FED. R. APP. P. 32.1(a) and 10th Cir. R. 32.1(A).

amount of interference with the judicial process; … (3) the culpability of the litigant; (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance; and (5) the efficacy of lesser sanctions." *Ehrenhaus*, 965 F.2d at 921 (internal quotations and citation omitted); *accord Lee v. Max Int'l, LLC*, 638 F.3d 1318, 1323 (10th Cir. 2011). These factors "do not represent a rigid test that a district court must always apply . . . [but] are simply a non-exclusive list of sometimes-helpful criteria or guide posts the district court may wish to consider in the exercise of what must always remain a discretionary function." *Lee*, 638 F.3d at 1323 (internal quotations omitted).

## DISCUSSION

### I. Degree of Actual Prejudice to Defendant

Defendant first argues that he has been prejudiced by Plaintiff's use of witness statements that had not been seen or signed by at least five witnesses. Defendant states that "[i]t was not until counsel for Defendant had expended significant time on motions, interviewing witnesses and agency personnel, and conducting site visits that it became apparent that many of [the] statements attributed to witnesses were fabricated." [Doc. No. 86, at 21]. Defendant adds that counsel has spent significant time and resources "inquiring into the veracity of witness statements, tracking down witnesses long since retired, and conducting discovery into this issue." *Id.* Defendant asserts that Plaintiff's conduct is also inherently prejudicial to both administrative and judicial processes. Further, "each of the fraudulent statements relate to the issue that is at the core of this case—Plaintiff's work restrictions and work hours as compared to other employees." *Id.*

11

In response, Plaintiff reiterates that all witness statements are valid, and that each of the five witnesses must have changed their story. Taking just Mr. Riemann as an example, Plaintiff has failed to respond substantively to Mr. Riemann's signed Declaration [Doc. No.86-5], in which he declared that "[he] was not even aware of the names Quang Nguyen and Rosalinn Giang before seeing this statement" and would not have signed his name to it as he was not aware of the facts stated therein. *Id.*

Upon careful consideration of the evidence provided by the parties, the Court finds that Defendant has suffered actual prejudice as a result of Plaintiff's use of the five witness statements detailed above, as well as Plaintiff's failure to respond to Defendant's third set of discovery requests, the entirety of which focused on Defendant's allegations of fraud on the Court.

**II.     Amount of Interference with the Judicial Process**

Defendant next argues that Plaintiff has interfered with the judicial process by filing the fabricated witness statements with the Court, often as part of voluminous motions with dozens of unmarked exhibits. Plaintiff responds that she "may not have performed to the level of an attorney during the discovery process," but now that she has counsel, this case should proceed on the merits.

Again, Plaintiff does not seem to grasp the seriousness of the conduct addressed in this Order. In addition to Defendant's time and resources culling through various witness statements to determine authenticity (and to prepare and respond to pretrial motions), the Court has expended significant judicial resources in analyzing Plaintiff's myriad of exhibits and witness statements to assess her claims. Although the Court did not specifically cite to

12

the witness statements that the Court has now found are inauthentic, the Court certainly reviewed all of Plaintiff's purported evidence in previously determining that her claims of Title VII retaliation, retaliatory hostile work environment, and constructive discharge survived dismissal [Doc. No. 48]. Plaintiff's assertion that there was no fraud on her part because many of her filings had been stricken by the Court for other reasons [Doc. No. 75, at 1-2] simply does not appreciate the seriousness of Plaintiff's interference with the judicial system. The Court finds that this factor also weighs in favor of dismissal.

### III.   Culpability of Plaintiff

Plaintiff argues in her response that "because Defendant cannot prove that Plaintiff fabricated or falsified documents, there is no culpability on the part of Plaintiff." [Doc. No. 89, at 12]. She again asserts that some unnamed witnesses "got spooked and changed their story, apparently to protect themselves from the same discrimination lodged upon Plaintiff." *Id.*

The Court finds that Plaintiff has willfully participated in bad-faith litigation tactics by using witness statements that were not drafted, signed, or seen by at least five witnesses in this case. Since, Plaintiff has alleged—without evidence—that all five witnesses must have changed their stories or decided to lie about their previous statements because two of the five witnesses have since been promoted within USPS. Notably, in her first response to Defendant's allegations of fraud on the Court, Plaintiff's chief reasoning for why she did not commit fraud was because all of the referenced documents had been stricken by the Court. [Doc. No. 75, at 1-2]. Plaintiff provided a chart showing documents that had been stricken, arguing that "not any of the Plaintiff's documents, exhibits ever existed in this

13

civil action … as such, there is no suspected fraud committed upon the court." *Id.* Plaintiff also contended that "Plaintiff never publicly show[ed] or use[d] any of these witness statements … [and] only filed these documents with[] the Equal Employment Opportunity Commission (EEOC) for [her] EEO Complaints." *Id.* at 2-3.[4] Finally, Plaintiff stated that she "must show the witnesses their original signed witness statements to remind them the substantive content of their witness statements since the incidents happened over 5-7 years ago, it could be forgotten or faded away." *Id.* at 3. Upon review of the signed Declarations of Mr. Riemann, Ms. House, Ms. Pickup, Ms. Hishaw, and Ms. Trezvant, Plaintiff's statement that she needs to remind the witnesses of their statements does not sufficiently counter these witnesses' declarations that they had never seen or signed the statements in the first place.

The Court also finds that Plaintiff willfully failed to participate in the very discovery that the Court previously ordered her to fully comply with, by failing to respond to Defendant's third set of discovery requests (to date) and by failing to attend the February 4, 2025 inspection of the "original witness statements." Plaintiff's various excuses for not attending the February 4 inspection—that she was afraid Defendant would take the documents, that she was sick, that her husband was sick, and that she forgot—are not credible. The Court has seen various e-mails between Plaintiff and defense counsel during

---

[4] This statement is false. As outlined in the factual background, Plaintiff filed many of the witness statements at issue in this litigation. [Doc. No. 42-31, at 12-13] (Daniel Riemann statements); [Doc. No. 42-31, at 8] (Sheila House statement); [Doc. No. 32, 22, at 2-3; Doc. No. 32-2, at 5; Doc. No. 42-31, at 4] (Janice Pickup statements); [Doc. No. 32-59, at 2] (Niocha Hishaw statement); [Doc. No. 32-49, at 2] (Veronique Trezvant statement).

these proceedings. Yet, prior to February 4, Plaintiff did not seek clarification from defense counsel as to what would happen at the February 4 inspection, nor did Plaintiff seek an extension due to her or her husband's illness. Further, Plaintiff had already sought one extension of the inspection, previously scheduled for January 10, 2025, which shows that Plaintiff could have contacted defense counsel prior to failing to appear at the February 4 inspection. These circumstances lead the Court to believe that Plaintiff willfully failed to comply with the limited discovery ordered by the Court.[5]

## IV.     Prior Warnings

In a prior Order [Doc. No. 80], the Court noted Plaintiff's "troubling" response to the allegations of fraud, found that Plaintiff did not appear to appreciate the seriousness of Defendant's allegations related to several of Plaintiff's witness statements, and warned that courts have issued the "harsh sanction of dismissal for far less serious offenses." *Id.* at 2. In the same Order, the Court explicitly ordered Plaintiff to comply with discovery into the limited issue of fabricated and/or wrongfully obtained evidence in this case. *Id.* at 3. In response to Defendant's motion for sanctions, Plaintiff acknowledges these warnings, but argues that once Defendant inspects the original witness statements, "it will be evident that

---

[5] Defendant also points to concerning conduct with respect to the private medical information of other USPS employees, which was filed by Plaintiff in this case. Defendant asserts that the "most likely explanation" as to how Plaintiff received other employees' CA-17s containing the confidential information is "that she used her union position to wrongfully obtain these documents in order to support her own claims of discrimination." [Doc. No. 86, at 24]. Although the Court suspects that Plaintiff may not have obtained all filed CA-17s with permission from the affected employee, there is simply not enough in the case record for the Court to determine how Plaintiff obtained the CA-17s. Accordingly, the Court did not take into consideration the CA-17 documents when determining whether to dismiss Plaintiff's action as a sanction.

dismissal is not an appropriate sanction." [Doc. No. 89, at 12]. The Court finds that Plaintiff had been warned that the Court would be weighing the sanction of dismissal in response to the evidence gathered during the 90-day limited discovery period, and that Plaintiff was also ordered to comply with discovery during said period.

### V.     Efficacy of Lesser Sanctions

Even considering Plaintiff's language barrier and *pro se* status up until retaining counsel, filing witness statements that the witnesses declare they did not see or sign is a serious abuse of the judicial process. In response, Plaintiff argues that no sanctions are appropriate, but if they were, dismissal is too harsh. The Court acknowledges that dismissal is a harsh sanction. However, the Court finds that merely striking the five witness statements filed by Plaintiff during this litigation would not be sufficient. *See Gilmer*, 12 F. App'x at 895 (citing *Pope v. Fed. Express Corp.*, 138 F.R.D. 675, 683 (W.D. Mo. 1990)) ("Permitting this lawsuit to proceed would be an open invitation to abuse the judicial process. Litigants would infer they have everything to gain, and nothing to lose, if manufactured evidence merely is excluded while their lawsuit continues."). Here, especially considering Plaintiff's lack of substantive response to the contents of the five witnesses' Declarations (for one example, that Mr. Riemann declared he did not even know Plaintiff or her husband before seeing his alleged statement or know of the events stated therein), the Court is not convinced that any lesser sanction would dissuade Plaintiff from continuing her same course of conduct.[6] And Plaintiff's insistence that the witnesses have

---

[6] On this point, Defense counsel states that she has received complaints from witnesses of Plaintiff using other phone numbers to contact witnesses so that they would answer her calls. At the

16

somehow changed their stories or are now lying, in the face of the evidence of Plaintiff's misconduct submitted by Defendant, further convinces the Court that Plaintiff is incorrigible. This factor weighs in favor of dismissal as a sanction.

## CONCLUSION

For these reasons, Defendant's Motion for Sanctions with Brief in Support [Doc. No. 86] is **GRANTED**. Plaintiff's action is **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED** this 6th day of February, 2026.

_____
TIMOTHY D. DeGIUSTI
Chief United States District Judge

---

deposition of Union Representative Koquise Edwards, Ms. Edwards testified that in the past, she has "received a call from the MDO that Rosalinn was bullying people to write statements." [Doc. No. 86-4, at 18]. When asked whether Ms. Edwards was "aware that there are witnesses who have said that [Ms. Edwards] [has] called them on the pretense of union business to then put them on the phone with [Plaintiff]," Ms. Edwards responded, "I have called people and she has spoken to them, yes." *Id.* at 19.